IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AIRSLATE, INC., <br><br>  *Plaintiff*, <br><br> v. <br><br>INKIT, INC., <br><br>  *Defendant* | C.A. No. <br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff airSlate, Inc. ("airSlate" or "Plaintiff") files this Complaint for patent infringement against Defendant Inkit, Inc. ("Inkit" or "Defendant"). In support of this action, airSlate alleges the following:

### NATURE OF THE ACTION

1. This action for damages and injunctive relief arises under the Patent Laws of the United States, 35 U.S.C. § 271, *et seq*.

### PARTIES

2. Plaintiff airSlate, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 17 Station St., Brookline, MA 02445.

3. airSlate conducts business through its web address: https://www.airslate.com.

4. Upon information and belief, Defendant Inkit, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 619 S. 10th St. 301, Minneapolis, Minnesota, 55404.

5. On information and belief, Defendant conducts business through its web address: https://www.inkit.com.

1

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves a claim arising under the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

7. The Court has personal jurisdiction over Defendant because Defendant is incorporated in the state of Delaware and has therefore consented to the jurisdiction of Delaware.

8. Venue is proper in this judicial district for Defendant pursuant to 28 U.S.C. §§ 1400 and 1391(b) and (c) because Defendant is incorporated in Delaware and therefore resides in this judicial district. Defendant also maintains an agent for service of process in Delaware.

## PLAINTIFF AIRSLATE

9. airSlate was founded in 2008 as an innovator in document and workflow management software. airSlate now operates as a global software-as-a-service ("SaaS") technology company headquartered in Brookline, Massachusetts. airSlate has approximately 1000 team members in six global offices. airSlate serves hundreds of thousands of customers worldwide with its no-code workflow automation, electronic signature, and document management solutions. airSlate's portfolio of award-winning products empowers teams to create, innovate, and automate to digitally transform their organizations to run faster and easier.

10. airSlate's portfolio of products, including airSlate, pdfFiller, and signNow, are powerful document and workflow management and editing solutions that provide users with the services of a document generator, online editor, workflow automation manager, cloud storage platform, and a signature request manager in one unique software suite.

11. The airSlate product is an all-in-one, no-code workflow automation solution that empowers anyone to create, innovate and automate document workflows. Using a single drag-and-

drop interface and hundreds of no-code bots, any user – whether non-technical or technical – can create an infinite array of customer workflows, from simple to complex. Users can automate and streamline the creation, execution, and retention of all workflow steps.

12.     airSlate's software platform is purpose-designed to assist users to streamline document management, achieve paperless workflow, and free up time, energy, and resources.

13.     airSlate has invested substantial resources in developing, refining, and optimizing its software platform since its inception in 2008.

14.     airSlate has pioneered many technologies in document and workflow management, including the technologies claimed in U.S. Patent No. 11,449,815 ("the '815 patent" or the "Asserted Patent"). airSlate owns all right, title, and interest in and to the '815 patent.

15.     The '815 patent, entitled "Automated Electronic Document Workflows," issued on September 20, 2022. Boris Shakhnovich is the inventor of the '815 patent. The '815 patent is valid, enforceable, and has not expired. A true and correct copy of the '815 patent is attached as Exhibit 1.

## DEFENDANT INKIT

16.     Defendant Inkit is a competitor of airSlate. Inkit manufactures, sells, and offers for sale products and services related to creating, editing, storing, and managing electronic document workflows and generating online documents.

17.     Inkit has infringed and continues to infringe on airSlate's valuable and proprietary intellectual property, including the Asserted Patent. Inkit is using airSlate's patented technology without a license and without airSlate's permission.

**THE PATENT-IN-SUIT**

18. airSlate is the owner and assignee of all rights, title, and interest in the Asserted Patent, and holds the right to sue and recover damages for infringement thereof. The Asserted Patent is valid and enforceable.

19. The invention in the Asserted Patent relates generally to computer-implemented methods and systems for creating, receiving, analyzing, completing, and archiving automated electronic document workflows.

20. The Asserted Patent is a reflection of Plaintiff's innovations, and, as described herein, contains limitations that, individually and/or collectively, are directed to inventive concepts that were unconventional and not well known or routine. These inventive concepts, as set forth and claimed in the Asserted Patent, have resulted in the success of the claimed inventions. The claimed inventions address long-felt but unsolved technical needs in the field of electronic document workflows.

21. The Asserted Patent relates to the automation of electronic document workflows, from the automatic creation of documents to the fully automated execution of those documents to the secure archival retention of those documents.

22. The Asserted Patent addresses several technical problems in the field of electronic document workflows. As one nonlimiting example, existing document workflows used by business are ad hoc and "can require employees/customers to scan paper documents into electronic form, email documents back and forth, manually transfer documents into a document management system, and/or manually copy data from electronic documents into customer relationship management (CRM) systems." Exhibit 1, at 1:19-25. These document workflows are inefficient, expensive, and wasteful. Using such unsophisticated systems introduced a number of drawbacks in prior art workflow systems.

23.     The Asserted Patent provides an unconventional, technical solution to these problems in part by providing an automated system for the efficient end-to-end automated and electronic creation, analysis, completion, and retention of document workflows. *See, e.g., id.*, 1:45-4:38. Unlike conventional prior art document management platforms, the technology disclosed in the Asserted Patent enables the incorporation and integration of "bots" into workflows to both automate the workflow process and to provide an unparalleled level of versatility not afforded by either paper documents or static, conventional document management and storage solutions. These bots, in part, allow for "organizations and/or users to create fully automated and arbitrarily complex electronic document workflows without the need for coding." *Id.*, 5:6-22; Fig. 72. Figure 72 of the specification, reproduced below, depicts a "Bot Library," which provides users with "quick access" to a menu of bots that can be incorporated and integrated into workflows.



FIG. 72

24. The automatic workflows enabled by bots can include the creation and distribution of documents for one or more signatures based on roles and permissions of users, as well as the generation of automatic notifications upon the successful signing of the one or more required signatures. Once fully executed, a document can be automatically archived for security and document retention purposes. *Id.*

25. The inventions claimed in the Asserted Patent also enable a workflow to be associated with one or more "add-ons" that can perform automated tasks related to individual workflow packets. *Id.*, 6:18-20. "An add-on may be implemented within the workflow server **102** (e.g., as a software module stored on the server) or by one or more external application services **106**." *Id.*, 6:20-23. For example, an "Import to CRM" add-on may be configured to import data fields for a completed workflow document into customer relationship management (CRM) service **106** *b* using an Application Programming Interface (API) provided by both the workflow server **102** and the CRM service **106** *b*. *Id.*, 6:23-28.

26. As another example, an "'Archive Document' add-on may be configured to export completed workflow documents to a document storage service **106** *c*. As yet another example, a 'Signature' add-on may collect an electronic signature for a workflow document and submit an image of the signature back to the workflow server **102**. As another example, an add-on may automatically upload filled-out documents to a designated cloud storage folder after a packet is submitted by the recipient." *Id.*, 6:28-42.

27. The invention enables workflows to "be shared within an organization according to a flexible set of permissions, and instances of the workflow (referred to as 'packets,' or 'flow slates') can be readily distributed to persons inside and outside of the organization." *Id.*, 5:6-22.

6

28. The invention allows for any workflow to be "distributed to an arbitrary number of recipients, with each recipient receiving a distinct packet (i.e., workflow instance) into which they can enter data. Each recipient's data may be stored in a database (e.g., as a collection of text values). Packets can be exported from the server **102** in one or more file formats. When a packet is exported, the server **102** may dynamically merge the stored recipient data with the workflow template documents to generate completed or filled-out documents." *Id.*, 6:1-17.

29. In addition, the invention allows for the automatic detection of document fields. For example, a user can upload "PDF files, DOCX files, JPEG files, or in any other suitable format or a combination of different formats. In some embodiments, an uploaded document may be analyzed by the document import module **208** to automatically identify fillable fields within the document." *Id.*, 8:61-9:17.

30. For example, "document import module **208** may detect that a template is a PDF file and then analyze the PDF file to identify form fields, such as radio buttons or text input fields, using metadata within the PDF file. These automatically identified fillable fields may correspond to the default set of fillable fields for the document which can be overridden by a user as part of the workflow creation/modification process. An imported template document may be stored in the file store **220** and fillable field information may be stored in the database **218**. Document import module **210** may be executed to perform workflow generation operations based on user interactions with one or more GUIs via a user interface of the client device **104**." *Id.*, 8:61-9:17.

31. The invention allows not only for the incorporation of local documents into automatic workflows, but also for the collection of documents from other document retention websites, such as a user's Google account, Google Drive, Dropbox, Box, Amazon S3, etc. *Id.*,

6:48-60; 20:26-44; Fig. 72. These documents are then analyzed and can be incorporated into new or existing workflows.

32. The claimed invention's ability to interpret and incorporate previously unknown documents into functional workflows bypasses the need for a user or the software to have knowledge of the underlying document – and avoids human error.

33. The combination of elements described and claimed in the Asserted Patent were unknown in the prior art and provided significant technical advantages over existing systems.

### INKIT'S NOTICE OF THE ASSERTED PATENT

34. At least since January 23, 2023, airSlate has given notice to the public that its suite of products, including airSlate, pdfFiller, and signNow, are protected by the Asserted Patent. Pursuant to 35 U.S.C. § 287(a), airSlate has posted on the Internet at www.airslate.com/patents a chart that associates airSlate's suite of patented products with the Asserted Patent.

35. Furthermore, airSlate also directly provided to Inkit actual notice of the Asserted Patent and of Inkit's infringement of the Asserted Patent in accordance with 35 U.S.C. § 287 no later than August 16, 2023, the date on which airSlate's counsel sent written correspondence to Inkit's counsel notifying Inkit of the Asserted Patent.

36. Notwithstanding airSlate's infringement allegations, Inkit has infringed and continues to infringe the Asserted Patent.

### COUNT 1
### PATENT INFRINGEMENT OF U.S. PATENT NO. 11,449,815

37. airSlate incorporates by reference the allegations contained in all preceding paragraphs.

38. The '815 patent is valid and enforceable.

39. airSlate owns the entire right, title, and interest to the '815 patent.

40. Inkit, in violation of 35 U.S.C. § 271, has infringed and continues to infringe at least claims 1 and 18 of the '815 patent—literally and/or under the doctrine of equivalents—by making, using, selling, and/or offering for sale products and services in the United States that practice and/or embody the inventions disclosed in the '815 patent, including at least Inkit's Secure Document Generation platform.

41. A claim chart evidencing Inkit's infringement of claims 1 and 18 of the '815 patent and setting forth certain nonlimiting examples of Inkit's infringement is attached hereto as Exhibit 2.

42. Inkit also has indirectly infringed and continues to indirectly infringe at least claims 1 and 18 of the '815 patent in violation of 35 U.S.C. § 271—literally and/or under the doctrine of equivalents—with knowledge or by being willfully blind that its actions constitute infringement, by actively inducing and continuing to actively induce its customers to infringe the '815 patent. Inkit specifically intends to induce infringement by providing information and instructions to its customers and potential customers regarding how to use its Secure Document Generation platform in an infringing manner. Evidence of Inkit's active inducement of infringement includes, by way of nonlimiting examples, Inkit's marketing materials provided to its customers and potential customers through its website and its other marketing activities, and the instructions and information contained in Inkit's product guides and instructional materials. Inkit provides these instructions with knowledge of the '815 patent and knowledge that its customers' and potential customers' use of its products and services infringes the '815 patent.

43. Inkit also has contributed to the infringement of, and continues to contribute to the infringement of, at least claims 1 and 18 the '815 patent in violation of 35 U.S.C. § 271—literally and/or under the doctrine of equivalents—with knowledge or by being willfully blind that its

actions constitute infringement, by selling, and/or offering for sale products and services in the United States that practice and/or embody the inventions disclosed in the '815 patent, including at least Inkit's Secure Document Generation platform.  The infringing products and services constitute a material part of the invention of the '815 patent, are known by Inkit to be especially made or adapted for use in infringing the Asserted Patent, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

44. Inkit has had constructive notice of the Asserted Patent at least since airSlate posted notice of the Asserted Patent on the Internet on January 23, 2023. Inkit has had actual notice of the Asserted Patent at least since August 16, 2023, because on that date airSlate informed Inkit of its infringement of the Asserted Patent.

45. airSlate is entitled to recover damages under 35 U.S.C. § 284 to adequately compensate for Inkit's infringement. Inkit's ongoing infringement is willful and deliberate, as Inkit became aware of the infringing nature of its products and services at least by August 16, 2023. Despite having actual knowledge of the '815 patent, Inkit has continued its infringing activities.

46. airSlate has been and continues to be damaged and irreparably harmed by Inkit's infringement of the '815 patent. This irreparable harm will continue unless this Court enjoins Inkit.

47. Inkit's conduct in infringing the '815 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

**WHEREFORE**, airSlate prays for judgment against Inkit and requests the following relief:

A. A judgment against Inkit as to infringement of one or more claims of the Asserted Patent;

B. A permanent injunction under 35 U.S.C. § 283, enjoining Inkit and its officers, directors, agents, servants, affiliates, employees, subsidiaries, parents, licensees, assigns, and customers, and all others acting in concert or participating with them from further acts of infringing, inducing infringement, and/or contributing to the infringement of the Asserted Patent;

C. A judgment against Inkit for damages sustained as a result of Inkit's infringement of the Asserted Patent in an amount to be determined at trial as provided under 35 U.S.C. § 284, including enhanced damages due to, for example, Inkit's willful infringement of the Asserted Patent;

D. An accounting for infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

E. An award of pre- and post-judgement interest on all damages caused by Inkit's infringing activities;

F. A finding that this case is exceptional under 35 U.S.C. § 285;

G. An award to airSlate of its reasonable attorneys' fees and costs incurred in connection with this action;

H. A compulsory future royalty; and

I. Any and all other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

airSlate respectfully requests trial by jury under Rule 38 of the Federal Rules of Civil Procedure of all issues in this action so triable.

Dated: November 16, 2023

**OF COUNSEL**

Michael Strapp (BBO #653884)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: 617.406.6031
Facsimile: 617.406.6100
michael.strapp@us.dlapiper.com

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468 - 5700
Facsimile: (302) 394 - 2341
brian.biggs@us.dlapiper.com

*Attorneys for Plaintiff*